**Crescencio S. MIRANDA, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, a Pennsylvania corporation, R.T. Slavin, Ray A. Duffany, and A.A. Negus, jointly and severally, Defendants.**

**Civ. A. No. 82–60133.**

United States District Court, E.D. Michigan, S.D.

Oct. 11, 1983.

Harold Provizer, Southfield, Mich., for plaintiff.

Brenda Clark, Squire, Sanders & Dempsey, Cleveland, Ohio, T. Patrick Durkin, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the Court on defendants' motion to compel answers to questions put to plaintiff during a deposition. The question presented is whether statements made by the plaintiff to a polygraph examiner during the post-examination interview, when the polygraph equipment was not in use, are privileged from disclosure in this case under the Michigan Polygraph Examiners Act, M.C.L.A. §§ 338.1701–1729, P.A. 1972, No. 295.

FACTS

Plaintiff was a maintenance and track foreman supervisor for defendant Consolidated Rail Corporation ("Conrail") when he was suspended from his job for nine months without pay in 1981. The suspension grew out of an incident on March 4 of that year, when plaintiff allegedly threatened his supervisor with a signal pistol. Plaintiff is a Mexican-American, and he alleges that his suspension was motivated by the racial prejudice of his superiors. He has brought this action for employment discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Federal Employers' Liability Act, 45 U.S.C.

§ 51 et seq., the Railway Labor Act, 45 U.S.C. §§ 151 and 152, and various state laws.

The present motion focuses upon a polygraph examination which plaintiff voluntarily undertook in connection with a criminal investigation of the March 4 incident.

The polygraph examiner has testified at a deposition that the polygraph examination of plaintiff, which was conducted on May 15th, 1981, followed the standard procedure for such an examination. The examiner conducted a pre-examination interview, the actual polygraph examination itself, during which the sensors are attached to the subject's body and his physiological responses are monitored by various graphing devices, and the post-examination interview. These three segments constitute the entire procedure that is undertaken by the examiner in every polygraph examination.

The examiner further testified that, during the pre-test interview, he drew to the plaintiff's attention the distinction between the information gleaned from the examination itself, such as the electronically-produced charts, and the examiner's own interpretation of the results, and those statements made by the plaintiff to the examiner during the pre- and post-test interviews. The examiner informed the plaintiff of his "Miranda" rights to remain silent and to the representation of counsel, and warned him that the statements made by plaintiff during the course of the examination could be used against the plaintiff in a court of law, unlike the results of the examination, which were protected by the Polygraph Examiners Act.

During the course of the actual examination, the examiner questioned plaintiff about his conduct on March 4th. The plaintiff, in response to a specific question, told the examiner that he did not enter his supervisor's office and threaten his supervisor. The examiner testified at his deposition that he concluded, from the results of the examination, that the plaintiff had not truthfully answered this question.

During the post-test interview, the examiner informed the plaintiff that he did not believe that the plaintiff had truthfully answered the questions put to him in the polygraph examination. According to the examiner, the plaintiff then responded that he did in fact enter his supervisor's office and brandish a signal gun. The plaintiff further stated that he had no intention of hurting his supervisor, but only wanted to frighten him. It is this statement that defendants now seek to obtain from plaintiff by way of deposition, and which plaintiff argues is protected under the terms of the Polygraph Examiners Act.

The examiner testified that he conducts a post-test interview after every examination, regardless of whether or not the examination has fortified or detracted from the subject's credibility. The purpose of this examination is to inform the subject of the results, to explain the nature of the examination to the subject, and to answer any questions that the subject may have about the examination.

M.C.L.A. § 338.1728 provides in pertinent part:

(2) ... Any communications, oral or written, furnished by a professional man or client to a licensed examiner, or any information secured in connection with an assignment for a client, shall be deemed privileged with the same authority and dignity as are other privileged communications recognized by the courts of this state.

Federal courts look to two different sources of law for rules concerning evidentiary privilege. Federal Rule of Evidence 501 provides as follows:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element

of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Thus, in federal question cases, federal courts will apply those privileges that were recognized by the common law, such as the attorney-client and priest-penitent privileges, as they have been interpreted by the federal courts. Only in cases arising under the diversity of citizenship jurisdiction of the federal courts will the federal courts apply those privileges that are the product of state statute or otherwise not the progeny of common law.

This case, then, is identical for the purposes of this motion to *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100 (3rd Cir.1982). *Thompson* involved allegations of violations of the federal anti-trust law and pendent state law claims. Thompson sought to obtain the deposition of accountants for General Nutrition, and General Nutrition objected, claiming that Pennsylvania's statutory accountant-client privilege protected any information held by the accountants. The court disagreed.

> We hold that when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule. The question is one of first impression in this court, but our holding is consistent with the legislative history of Rule 501 and the decisions of a number of trial courts. It is also consistent with the general rule in federal practice disfavoring privileges not constitutionally based.

671 F.2d at 104 (citations omitted).

The court finds the *Thompson* decision to be applicable to the instant motion, and concludes that the privilege created by the Michigan Polygraph Examiners Act has no effect in this case which rests predominantly upon federal law.

Furthermore, even if the court were to apply M.C.L.A. § 338.1728, the court concludes that the privilege would not prevent the disclosure of the communication at issue here.

The statute is drafted broadly, and confers a privilege against disclosure of "any communications, oral or written, . . . secured in connection with an assignment for a client." Nonetheless, any interpretation of such an evidentiary privilege must be read with a concern that such privileges are to be construed narrowly. *U.S. v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

This Court has searched in vain for judicial precedent from the Michigan courts to aid it in it's interpretation of § 338.1728. The single reported decision, *In re Petition of Delaware,* 91 Mich.App. 399, 283 N.W.2d 754 (1979) did not address the precise question in this case, that being whether information obtained during a post-test interview was covered by the privilege.

The Court concludes that the purpose of the statutory privilege created by § 338.-1728 is to shield from disclosure the results of the polygraph examination. Such results would comprise the opinion of the examiner about the veracity of the subject of the examination, and any documents, either man-made or machine-made, which recorded the physiological responses of the subject during the course of the exam. The statute prevents the disclosure of this information because it is precisely this information which is the most problematic. The question of the reliability of polygraph results is hotly disputed. The Michigan legislature has made the decision to exclude these results from judicial proceedings, due no doubt to the uncertainty that surrounds polygraphs.

However, the communication at issue in this case is not the result of a polygraph examination. The answer to the question of whether or not the plaintiff actually made the statement during the post-test interview that he did threaten his supervisor with the intention of frightening him does not depend in any way upon the accuracy of the polygraph examination, because the polygraph equipment was not in opera-

**1258**

tion at that time. In other words, the defendants are not seeking to introduce evidence derived from the examination; they are not seeking to introduce the opinion of the examiner that the plaintiff was lying when he denied that he had assaulted his supervisor. Rather, defendants seek to introduce merely a statement made by the plaintiff to the polygraph examiner, which he might have made to any person who could then recount it in court, subject to the rules governing hearsay testimony. The fact that plaintiff made this statement after having undertaken a polygraph examination does not in any way implicate the policy reasons for excluding the results of a polygraph examination.

The Court thus concludes that the statement made by the plaintiff to the polygraph examiner during the post-test interview is not covered by the privilege erected by M.C.L.A. § 338.1728(1). For the foregoing reasons, the motion is granted, and the plaintiff is ordered to answer the question directed to him by defendants' counsel during the deposition of June 9, 1983.

So Ordered.